## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEANNE S. Di LORETO, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 08-989 |
| | : | |
| v. | : | |
| | : | |
| WILLIAM F. COSTIGAN; | : | |
| ERIC R. DINALLO; | : | |
| MARK J. PETERS; and | : | |
| ANDREW J. LORIN, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |
| JEANNE S. Di LORETO, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 08-990 |
| | : | |
| v. | : | |
| | : | |
| INSURANCE DEPARTMENT OF | : | |
| THE STATE OF NEW YORK; | : | |
| WILLIAM F. COSTIGAN; | : | |
| ERIC R. DINALLO; | : | |
| MARK J. PETERS; and | : | |
| ANDREW J. LORIN, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                        February 19, 2009

    Presently before this Court are three motions to dismiss filed by:  (1) Defendant State of

New York Insurance Department ("NYSID"); (2) Defendant Costigan; and (3) Defendants Di

Nallo, Peters, and Lorin ("NYSID Defendants").  For the reasons discussed below, Defendants'

Motions to Dismiss are granted.

## I.   PROCEDURAL AND FACTUAL HISTORY

These filings are the latest salvos in a long-running legal dispute arising from the Insurance Department of New York's liquidation of Nassau Insurance Company ("Nassau") in 1984.  (Compl. ¶ 32.)  Since that time, the parties have been involved in near-constant litigation culminating in a $20,000,000 jury verdict against Plaintiff, Jeanne Di Loreto, and her husband.[1] The NYSID Liquidator's efforts to enforce that judgment in Pennsylvania are the basis for the present dispute.

Founded in 1965, Nassau was owned by Plaintiff and her husband, Richard Di Loreto. (Id. ¶ 23.)  In 1976, the Di Loretos formed Ardra Insurance Company ("Ardra"), a Bermuda corporation, to provide "reinsurance coverage to Nassau."  (Id. at ¶ 26.)  Plaintiff served as President of Ardra, a position her counsel deems to have been "ceremonial . . . in that she held the office without performing any real or substantive responsibilities."  (Id. at ¶ 27.)  As President of Ardra, Plaintiff signed key several documents relating to its operation.[2]  An April 1985, Summons and Complaint issued by James P. Corcoran as NYSID Superintendent and

---

1.  See e.g. Corcoran v. Ardra Ins. Co., Ltd., 657 F. Supp. 1223 (S.D.N.Y. 1987); Corcoran v. Ardra Ins. Co., Ltd., 842 F.2d 31 (2d Cir. 1988); Corcoran v. Ardra Ins. Co., Ltd.,156 A.D.2d 70 (N.Y. App. Div. 1990); Curiale v. Ardra Ins. Co., Ltd., 189 A.D.2d 217 (N.Y. App. Div. 1993); Curiale v. Ardra Ins. Co., Ltd., 202 A.D.2d 252 (N.Y. App. Div. 1994); Curiale v. Ardra Ins. Co., Ltd., 223 A.D.2d 445 (N.Y. App. Div. 1996); Serio v. Di Loreto, Civ. A. No. 00-8651, 2002 WL 426165 (S.D.N.Y. Mar. 19, 2002); Serio v. Ardra Ins. Co., Ltd., 304 A.D.2d 362 (N.Y. App. Div. 2003); Serio v. Ardra Ins. Co. Ltd., 100 N.Y.2d 576 (N.Y. 2003); Serio v. Ardra Ins. Co., Ltd., 100 N.Y.2d 516 (N.Y. 2003); Di Loreto v. CNA Ins. Co., Civ. A. No. 98-3488, 1998 WL 962024 (E.D. Pa. Dec. 18, 1998);  In re Di Loreto, 277 B.R. 607 (Bankr. E.D. Pa. 2000); Di Loreto v. CNA Ins. Co., Civ. A. No. 98-3488, 2000 WL 45994 (E.D. Pa. Jan. 21, 2000); In re Di Loreto, Civ. A. No. 04-1326, 2006 WL 2974156 (E.D. Pa. Oct. 13, 2006);  In re Di Loreto 266 Fed.Appx. 140 (3d Cir. 2008); In re Di Loreto, Civ. A. No. 07-15413bf, 2008 WL 141922 (Bankr. E.D. Pa. Jan. 11, 2008); In re Di Loreto, 388 B.R. 637, 656 (Bankr. E.D. Pa. 2008); Di Loreto v. Costigan, Civ. A. No. 08-989, 2008 WL 4072813 (E.D. Pa. Aug. 29, 2008).

2.  (1) First Casualty Excess of Loss Reinsurance Contract Entered Into Between Nassau Insurance Company and Ardra Insurance Company, Ltd. (Doc. A-1-78), (2) Excess of Loss Reinsurance Contract Entered Into Between Nassau Insurance Company and Ardra Insurance Company, Ltd., (3) Addendum No. 1, (4) Addendum No. 2, and (5) First Casualty Excess of Loss Reinsurance Contract Entered Into Between Nassau Insurance Company and Ardra Insurance Company, Ltd. (Doc. NO. A-7-82). (Exs. to Pl.'s Compls. mailed to Chambers, July 30, 2008, Ex. A.)

Liquidator of Nassau indicated that Mrs. Di Loreto was the 100% beneficial owner of Tiber Holding Corporation ("Tiber"), Ardra's ultimate parent.  (Exs. to Pl.'s Compls. mailed to Chambers, July 30, 2008, Ex. A, Compl. 3.)

In 1985, acting as Liquidator of Nassau (Liquidator), the NYSID Superintendent brought suit seeking, among other things, "recovery of reinsurance proceeds due to Nassau under certain reinsurance agreements between Nassau and Ardra Insurance Company, Ltd.; [and] damages for the costs and disbursement of recovering the reinsurance proceed due to Nassau under the Reinsurance Agreements."  (Id. at 1-2.)  On April 18, 2002, New York Supreme Court Judge Schlessinger entered a jury verdict against both "DiLoreto Defendants in the amount of $20,507,456.86."  Serio v. Ardra Ins. Co., 304 A.D.2d 362, 362 (N.Y. App. Div. 2003).  The Appellate Division affirmed Judge Schlessinger's decision noting that "[t]he verdict was not against the weight of the evidence" and "contrary to defendant-appellant's claim, the evidence provided ample support for the jury's finding that the transactions at issue [between Ardra and Nassau] . . . were unfair and inequitable to Nassau [and] . . . the proof showed that the Di Loretos, through their control of Ardra, deprived it of the funds needed to meet its reinsurance obligations."  Id. at 363.  Given that transactions paid by Nassau "were immediately transferred to other Di Loreto-owned entities, the jury was entitled to consider the sequential transfers as part of an integrated transaction designed to benefit Di Loreto entities by effectively denying Ardra's insured the coverage for which it had contracted and paid."  Id.  Plaintiff's subsequent appeal to New York's highest court was "dismissed," as was Plaintiff's second motion for leave to appeal. Serio v. Ardra Ins. Co. Ltd., 100 N.Y.2d 576 (N.Y. 2003); Serio v. Ardra Ins. Co. Ltd., 100 N.Y.2d 516 (N.Y. 2003).  In 2002, the Liquidator sought to transfer its judgment to

3

Pennsylvania, where the Di Loretos reside. (Compl. ¶¶ 14, 86, 1, 3.)  The Liquidator did not

attempt to execute on its judgment in Pennsylvania until 2007.  (Id. at ¶¶ 15, 87.)

A.       **Actions Subsequent to the New York Proceedings**

As Plaintiff notes, for five years, no efforts were made to enforce the New York

judgment.  But this changed when the Liquidator sought to execute judgment against Plaintiff,

and filed an involuntary bankruptcy petition in the Eastern District of Pennsylvania.  The

Liquidator initiated both actions as a result of Plaintiff's legal malpractice action against the law

firm of Pepper Hamilton.  (Id. ¶ 88.)  Trying to "secure a favorable resolution of the Pepper

claim," Plaintiff's counsel "sought the assistance of the defendants in prosecuting the Pepper

claim."  (Id. ¶ 90.)  Instead, the Liquidator "initiated the execution on judgment and attempted to

have the sheriff of Chester County sell her home, and seize all of the furniture and other

contents of her home."  (Id. ¶¶ 92, 93.)  Plaintiff filed a motion in the Chester County Court of

Common Pleas to "thwart his [the Liquidator's] attempts to collect against Jeanne Di Loreto,"

and the Chester County Court of Common Pleas stayed the sheriff's sale.  (Id. ¶¶ 94, 95.)

Agreement was reached that no action would be taken "until such time as the lawsuit against

Pepper Hamilton was resolved," but settlement was delayed due to "Pepper Hamilton's fear that

the garnishment filed by the Defendants although improper, prevented them from transferring

any money to the Di Loretos in compliance with a settlement agreement."  (Id. ¶¶ 94, 95, & 97.)

Pepper Hamilton filed an "Emergency Motion to Set Aside Writ of Execution," which was

scheduled for hearing.  (Id. ¶¶ 99, 100.)  But the day before the hearing, the Liquidator filed an

Involuntary Bankruptcy Petition against Plaintiff "forcing a stay of the Pepper claim."  (Id. ¶

101.)  The involuntary bankruptcy was later dismissed for improper service.

Responding to Defendants' actions, Plaintiff filed two Complaints in Pennsylvania state courts.  The first Complaint, filed in the Court of Common Pleas of Philadelphia County (the "Philadelphia Suit" or "Phila. Compl."), named William F. Costigan, Eric R. Di Nallo, Mark G. Peters, and Andrew J. Lorin as defendants.  The second suit, filed in the Court of Common Pleas of Chester County (the "Chester Suit" or "Chester Compl."), named the same four defendants and added the NYSID.[3]  Defendants Lorin, Peters, and Di Nallo filed Notices of Removal in both suits, asserting both federal question and diversity jurisdiction, and later Defendant Costigan filed a Motion to Remove.  Plaintiff sought to remand both matters to the state courts, which this Court denied on August 29, 2008.  (Doc. No. 29.)

The Complaints[4] seek "to prevent the execution of . . . a judgment obtained against her by the New York State Insurance Department's Liquidation Bureau . . . as the judgment was obtained in violation of Plaintiff Jeanne Di Loreto's due process rights."  (Compl. 1.)  Despite this, Plaintiff avers that she "is not challenging the substance of the underlying litigation but rather, the insufficient process that Plaintiff was forced to endure as a result of the New York Judgment."[5]  (Pl.'s Resp. to Mot. to Dismiss 10.)  Rather, she asserts that due process prevents Pennsylvania courts from honoring the judgment since "[t]he Liquidator brought a lawsuit against Plaintiff with virtually no evidence, that was rendered by a constitutionally defective jury, which was defended by a negligent attorney who was representing both Di Loretos, and a

---

3.   Because the parties and issues in these two suits are largely the same, this Court will examine these motions together.  In discussion of the Philadelphia Suit, all citations, unless otherwise noted, refer to documents in case No. 08-989; in the Chester Suit discussion, all citations refer to documents in case No. 08-990.

4.   This Memorandum, unless noted otherwise, will only cite to the Philadelphia Court of Common Pleas Complaint.

5.   Plaintiff is treading a fine line for were she challenging the "substance of the underlying judgment," the United States Supreme Court, and not this Court, would be the appropriate forum.

manipulative prosecutor which so tainted the judicial proceedings." (Id.)  Given these

infirmities, Plaintiff seeks a declaratory injunction barring enforcement of the New York

judgment as well as compensatory and punitive damages.  (Compl. 3.)  In support of her request,

Plaintiff alleges five claims: (1) violation of due process (Id. ¶¶ 110-126); (2) equal protection

violation (Id. ¶¶ 127-133); (3) abuse of process (Id. ¶¶ 134-140); (4) intentional infliction of

emotional distress (Id. ¶¶ 141-148) and (5) declaratory injunction (Id. ¶¶ 149-151).

## II.   STANDARDS OF REVIEW FOR A MOTION TO DISMISS

### A.   Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

The purpose of a Fed. R. Civ. P. 12(b)(6) motion is to test the legal sufficiency of a

complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 12(b)(6), a

defendant bears the burden of demonstrating that plaintiff has not stated a claim upon which

relief can be granted.  FED. R. CIV. P. 12(b)(6).  When considering such a motion to dismiss, the

court must "accept as true allegations in the complaint and all reasonable inferences that can be

drawn therefrom, and view them in the light most favorable to the nonmoving party."  Rocks v.

City of Phila., 868 F.2d 644, 645 (3d Cir. 1989).  Notably, though, the court will not accept

unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the

form of factual allegations.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.

1997). The question before the court is not whether the plaintiff will ultimately prevail.  See

Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984).  Rather, the court

should only grant a 12(b)(6) motion if "it appears beyond a reasonable doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief."  Carino v.

Stefan, 376 F.3d 156, 159 (3d Cir. 2004) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

"The defendant bears the burden of showing that no claim has been presented."  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

      **B.**    **Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2)**

       Federal Rule 12(b)(2) provides for dismissal due to a "lack of personal jurisdiction." FED. R. CIV. P. 12(b)(2).  Once a defendant files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the burden shifts to the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper.  Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1121 (W.D. Pa. 1997).  A plaintiff meets this burden by making a *prima facie* showing of "sufficient contacts between the defendant and the forum state."  Id. (quoting Mellon Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992)).  A Rule 12(b)(2) motion inherently requires resolution of factual issues outside the pleadings.  Once the defense has been raised, plaintiff must sustain the burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence, but may not rely on the pleadings alone.  Weber v. Jolly Hotels, 977 F. Supp. 327, 331 (D.N.J. 1997) (citing, inter alia, Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 67 n.9 (3d Cir. 1984)).  Courts must look beyond the pleadings when ruling on a motion brought under Rule 12(b)(2).  Id.

**III.**   **DISCUSSION**

    **A.**    **NYSID's Motion to Dismiss**

    In its Motion to Dismiss, the NYSID—as a state agency and not as Liquidator—provides five reasons why Plaintiff's Complaint(s) should be dismissed:[6]  (1) no cause of action; (2) lack

---

6.  The arguments raised in the N.Y. State Motion to Dismiss also apply to the NYSID Superintendent when acting in his capacity as an employee of the State of New York.

of jurisdiction; (3) failure to state a cause of action under § 1983; (4) *res judicata*; and (5) barred by the statute of limitations.  (N.Y. State Mot. to Dismiss 3-4.)  The Court begins by examining the second issued raised by the NYSID.  For the reasons discussed below, the Court finds no personal jurisdiction over the NYSID, thereby requiring that the Complaint against it be dismissed.

Federal Rule of Civil Procedure 4(e) provides that federal courts may exercise personal jurisdiction over a non-resident defendant to the extent provided by the law of the state in which the federal court sits.  FED. R. CIV. P. 4(e); see also  Blue Ribbon Commodity Traders, Inc. v. Supermercados Mr. Special, Inc., Civ. A. No. 07-4036, 2008 WL 2468381, at *2 (E.D. Pa. June 18, 2008).  Under Pennsylvania's long-arm statute, personal jurisdiction over nonresident defendants is permitted "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contacts with this Commonwealth allowed under the Constitution of the United States."  42 PA. CONS. STAT. § 5322 (1992); see Mellon Bank, 960 F.2d at 1221 ("The Pennsylvania statute permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment.").  Therefore, a court's inquiry is solely whether the exercise of personal jurisdiction over the defendant violates due process.  Mellon Bank, 960 F.2d at 1221.

Physical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant, IMO Indus, Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998), but instead may be based on either a defendant's general or specific contacts with the forum.  Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).  Plaintiff asserts that this Court has both general and specific jurisdiction over the NYSID.

1.      **General Jurisdiction**

General jurisdiction turns upon the defendant's "continuous and systematic contacts" with the forum.  Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-416 (1984)).  Proof of such contact requires a showing of "extensive and pervasive activity" in the forum state.  See Reliance Steel Prods. Co. v. Watson, Ess, Marshall, & Engass, 675 F.2d 587, 589 (3d Cir. 1982) (quotations omitted).  A defendant's contacts need not be related to the cause of action being litigated.  McMullen v. Euro. Adoption Consultants, Inc., 109 F. Supp. 2d 417, 418 (W.D. Pa. 2000).  If the foreign defendant "maintains continuous and systematic contacts with a state, the state has general personal jurisdiction over the party, and the non-resident may be sued in that state on any claim."  Wilmington Fin., Inc. v. Moonis, Civ. A. No. 08-2365, 2008 WL 4661033, at *3 (E.D. Pa. Oct. 21, 2008) (quotations omitted); see also 4 Charles Alan Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE CIV.3D § 1067.5 (3d ed. 2008) ("As many of the illustrative federal cases . . . indicate, the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general *in personam* jurisdiction.").

Plaintiff does not argue that the NYSID has "continuous and systematic" contacts with Pennsylvania.  Rather, she notes that the "NYSID, without any further proof or documentation asks the Plaintiffs to simply agree that NYSID lack (*sic*) any continuous or systematic contacts with the Pennsylvania forum" while providing "no proof of the assertions contained in its Motion.  Without further proof, perhaps in the form of deposition, it is impossible for Plaintiffs to take these allegations as truth."  (Pl.'s Opp. to N.Y. State Mot. Dismiss 15.)   This argument

completely misplaces the burden of proof.  General jurisdiction imposes a high evidentiary threshold.  Contacts may not be "carefully tailored" rather they must be "extensive and pervasive."  Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am., 651 F.2d 877, 890 (3d Cir. 1981) (Gibbons, J., dissenting).

Plaintiff fails to establish the extensive and pervasive activity necessary for a finding of general jurisdiction.  The NYSID is a New York state regulatory agency whose authority is grounded in New York law and whose scope is limited to New York insurance companies.  The NYSID has neither offices nor employees in the Commonwealth of Pennsylvania.  Plaintiff provides no other evidence satisfying general jurisdiction's high threshold and may not rely solely on the pleadings to assert jurisdiction.  See Weber, 977 F. Supp at 331.  Consequently, the Court declines to find general jurisdiction.

### 2.    Specific Jurisdiction

Absent "continuous and systematic" contacts, a plaintiff may rely on "specific jurisdiction" where the cause of action is related to or arises out of the defendant's contacts with the forum.  IMO Indus., 155 F.3d at 259 (citing Helicopteros, 466 U.S. at 414 n.8).  To properly exercise specific jurisdiction plaintiff must satisfy a three-part test.  Louis A. Grant, Inc. v. Hurricane Equip., Inc., Civ. A. No. 07-438, 2008 WL 892152, at *3 (W.D. Pa. Apr. 2, 2008). "First, the plaintiff must show that the defendant has constitutionally sufficient 'minimum contacts' with the forum."  IMO Indus, 155 F.3d at 259 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).  Second, plaintiff's claim must "arise out of or relate to those activities."  Helicopteros, 466 U.S. at 414.  Third, the reviewing court may consider additional factors to ensure that the exercise of jurisdiction otherwise "comport[s] with 'fair play

and substantial justice.'" <u>Burger King</u>, 471 U.S. at 476 (quoting <u>Int'l Shoe Co. v. State of</u> <u>Wash., Office of Unemployment Comp. and Placement</u>, 326 U.S. 310, 320 (1945)).

 To satisfy the first and second components of the specific jurisdiction test, acts identified by plaintiff must be "such that [the defendant] should reasonably anticipate being haled into court [in the forum state]." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 266, 297 (1980). It has long been recognized that minimum contacts necessary to support specific jurisdiction exist only where the defendant "has purposefully directed its activities toward the residents of the forum state . . . or otherwise 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" <u>IMO Indus.</u>, 155 F.3d at 259 (quoting <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958) (other internal quotations omitted)). "This test is intended to protect a non-resident defendant from jurisdiction based on contacts that are 'random, fortuitous,' or 'attenuated,' or that result from the unilateral activity of another party or a third person." <u>Louis A. Grant, Inc</u>, 2008 WL 892152, at *3 (quoting <u>Burger King</u>, 471 U.S. at 475).

 Plaintiff asserts that this Court possesses minimum contacts over the NYSID, and its Superintendent, due to the Liquidation Bureau's actions in the Pennsylvania courts. Plaintiff equates the Liquidation Bureau with the NYSID and its Superintendent on the premises that: (1) the Liquidation Bureau is a state agency that is part of the NYSID, and (2) that the Superintendent of Insurance, as head of the Liquidation Bureau, is an officer of the State of New York. The NYSID, in response, asserts that neither it nor the Superintendent, as head of the NYSID, had any contacts with Pennsylvania. This Court agrees with Defendant and finds that Plaintiffs's basis for minimum contacts is flawed.

First, as to the NYSID, the Court declines to attribute the Liquidation Bureau's minimum contacts to the NYSID or the State of New York.  New York courts have defined a state agency as "[a]ny . . . entity performing a governmental or proprietary function *for the state*," and determined that the Liquidation Bureau is not a state agency as it "does not perform a governmental or proprietary function 'for the state,' but rather runs the day-to-day operations of private businesses in liquidation."  Dinallo, 877 N.E.2d at 648 (citing State Finance Law § 2-a [3]).   Further, the Liquidation Bureau "is not part of the Insurance Department's budget, operates without the benefit of state funds, maintains its own errors and omissions coverage, and is represented by its own counsel and not the Attorney General as is normally the case when a state agency is sued."  Id.

Plaintiff asserts that the NYSID's actions, in executing judgment and filing an involuntary bankruptcy action in Pennsylvania "were separate and independent actions from the regulatory function involving the Liquidation of Nassau" and that the "New York action was not filed in any way [to] enable the liquidation of Nassau.  (Pl.'s Resp. To N.Y. State Mot. to Dismiss 9.)  This assertion, however, is without basis.  The Liquidation Bureau's authority is only derived from New York statute, and it is within this statutory framework that the Superintendent pursued funds from Plaintiff.[7]   The New York litigation was inextricably linked to the Nassau's liquidation.

---

7.  New York courts have held that the Liquidator may pierce the corporate veil when done for "the benefit of the company's creditors and not its shareholders."  Corcoran v. Frank B. Hall & Co., Inc.,149 A.D.2d 165, 174 (N.Y. App. Div. 1989).  Corcoran is analogous to the case at hand.  Just as in this case, the shareholder in Corcoran ran the company for his own benefit, and the Liquidator sought to recover funds due the insurance company.  Id. at 175. The court held that the NYSID may maintain suit on behalf of the liquidated insurance company against third parties. Id. at 178.  It is precisely the same behavior—the Di Loreto's use of Nassau for their personal benefit—that led the Liquidator to "pierce the corporate veil."

Second, as to the Superintendent, the Court notes that the Superintendent's role as the NYSID head is distinct from any role involving the Liquidation Bureau.  New York courts recognize that "the Superintendent of Insurance serves in two distinct capacities:  (1) as supervisor and regulator of New York State's insurance industry as a whole; and (2) as a court-appointed receiver on behalf of distressed insurers." Dinallo v. DiNapoli, 877 N.E.2d 643, 644 (N.Y. 2007).  This division of labor protects "creditors, policyholders and general public," permitting the Superintendent to "rehabilitate or liquidate a domestic insurer." Id.  Upon determining that rehabilitation is futile, the Superintendent "may apply to the court under this article for an order of liquidation," and taking "the place of the insolvent insurer."  N.Y. INS. Law § 7403(c) (McKinney 1984); Dinallo, 877 N.E.2d at 644-45 (quotations omitted). The Superintendent, as Liquidator, possesses a legal status "separate and distinct from the Superintendent of Insurance as the public official charged with regulating the industry generally." Id. at 648 (quoting Matter of Ideal Mut. Ins. Co., 140 A.D.2d 62, 67-68 (N.Y. App. Div. 1988).  The Superintendent's role as Liquidator "is judicial and private and his role as regulator and supervisor is administrative and public." Id.  As a result, the "Superintendent as liquidator is not a state officer but rather one who acts on behalf of a private entity." Id.

Plaintiff "concedes that the Superintendent 'wears two hats' and does not perform a regulatory function when acting as the liquidator of an insolvent insurer."  (Pl. Resp. to N.Y. State Mot. to Dismiss 9.)  She again asserts, however, that the New York lawsuits were not filed to "enable the liquidation of Nassau," but rather were done under color of state law to deprive Plaintiff of her due process rights.  (Id.)  Plaintiff fails to recognize, however, that New York law permits the Liquidator to liquidate and operate Nassau while giving notice "to all creditors

13

to present their claims."  N.Y. INS. LAW § 7405(a), (b) (McKinney 1984).  Thus, empowered by New York Law, the Superintendent—as Liquidator—filed suit against Plaintiff for the benefit of Nassau and not New York State.

Aside from the actions of the Liquidation Bureau, which cannot be attributed to either the NYSID or its Superintendent, Plaintiff provides no evidence that either the NYSID, or its Superintendent, had any contacts with Pennsylvania.  Granting specific jurisdiction over the NYSID and its Superintendent, in his official capacity, would open the "judicial floodgates" by creating personal jurisdiction over foreign entities possessing, at best, a tangential relationship to the underlying issues being litigated.  Grimes v. Wetzler, 749 A.2d 535, 541 (Pa. Super. 2000).  Such a determination would shred any notion that specific jurisdiction requires minimum contacts sufficient to create a reasonable expectation of being haled into court.  This Court does not possess specific jurisdiction over either the NYSID or the Insurance Superintendent in their official, governmental capacities.  Their Motion to Dismiss is granted.[8]

## B.   Defendant Costigan's Motion to Dismiss

The Court next turns to the Motion to Dismiss filed by Defendant Costigan.  Since 1989, Defendant Costigan has represented the NYSID Superintendent as Nassau's Liquidator.  (Decl. of William F. Costigan in Support of Mot. to Dismiss ¶ 3.)  Working for the Liquidator, he handled the "trial and appeals in the underlying litigation . . . *in New York*" for the suit against Ardra, Plaintiff, and Mr. Di Loreto.  (Id. ¶ 8) (emphasis in original).   A member of the New

---

8.  Plaintiff argues that the effects test, as articulated in Calder v. Jones, 465 U.S. 783, 789-90 (1984), and not International Shoe's minimum contacts test should apply as Plaintiff alleges that Defendant NYSID committed intentional torts against her.  (Pl. Resp. to N.Y. Mot. to Dismiss 16.)  Plaintiffs claim that under the Effects test, the "defendant is not required to have had any contacts with the forum state" instead the proper inquiry is whether "defendant's tortious conduct was 'expressly aimed' at the forum state."  (Id. at 16-17.)

14

York State bar, Costigan lives in New York.  (Id. ¶ 7.)  In approximately 1983, he was admitted to practice in the Commonwealth of Pennsylvania, but his admission "lapsed because of unmet CLE requirements."  (Id. ¶ 2.)

Costigan notes that Plaintiff's Pennsylvania Complaints cite four actions that took place in Pennsylvania: (1) registration of the Judgment with the Chester County Prothonotary in 2002 and revival of same in 2007; (2) service of the Writ of Execution upon Pepper Hamilton in 2007; (3) the initiation of the foreclosure proceeding in relation to Jeanne Di Loreto's Malvern Pennsylvania estate and the contents thereof, also in 2007; and (4) filing of the involuntary bankruptcy petition on September 17, 2007.  (Id. ¶ 8.)  He asserts that Pennsylvania counsel represented the NYSID Liquidator in all these actions, and while "not an attorney of record [Costigan] did seek *pro hac vice* admission in relation to the foreclosure proceeding in the Court of Common Pleas for Chester County."  (Id. ¶ 8.)  The Di Loretos' attorney opposed his admission, and while the motion was briefed, it was not adjudicated.  (Id. ¶ 9.)

Costigan asserts that dismissal of the claims against him is warranted on several grounds.[9]  The Court's analysis, however, begins – and ends – by examining whether this Court possesses personal jurisdiction over him.  Plaintiff's Memorandum opposing Defendant Costigan's Motion to Dismiss "concedes that this honorable Court does not have general jurisdiction over defendant Costigan."  (Pl. Resp. to Costigan Mot. to Dismiss 12.)  Plaintiff, however, avers that the Court possesses specific jurisdiction based on Defendant's intentional

---

9.   Specifically, Costigan asserts that (1) he is not subject to Pennsylvania jurisdiction; (2) the New York judgment is entitled to Full Faith and Credit (U.S. Const. Art. IV, § 1); (3) the verdict requirement bars Plaintiff from collaterally attacking the New York judgment; (4) Plaintiff's § 1983 claim fails to state a claim; (5) Plaintiff has failed to state a claim for abuse of process; and (6) Plaintiff has failed to state a claim for intentional infliction of emotional distress.  (Costigan Mot. to Dismiss 9-14.)

torts, which were directed at the state of Pennsylvania.  Focusing on this inquiry, the Court finds

no such jurisdiction and, therefore, grants his motion to dismiss.

    In the case of an intentional tort claim, the first and second factors of the International

Shoe analysis are replaced by the Effects Test articulated by the United States Supreme Court in

Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482 (1984).  See IMO Indus., Inc. v. Kiekert AG, 155

F.3d 254, 265 (3d Cir. 1998) (adopting Calder "effects" test).  "Under the effects test, a court

may exercise personal jurisdiction over a nonresident defendant who acts outside the forum state

to cause an effect upon the plaintiff within the forum state."  Carteret Sav. Bank, FA v. Shushan,

954 F.2d 141, 148 (3d Cir. 1992).[10]  The Third Circuit has developed a three-part test based on

Calder noting that:

> First, the defendant must have committed an intentional tort.
> Second, the plaintiff must have felt the brunt of the harm caused
> by the tort in the forum, such that the forum can be said to be the
> focal point of the harm suffered by the plaintiff as a result of the
> tort.  Third, the defendant must have expressly aimed his tortious
> conduct at the forum, such that the forum can be said to be the
> [10]focal point of tortious activity.

IMO Indus., 155 F.3d at 265.

    Plaintiff argues that the first two prongs of the Effects Test have been met as "it is

without question that all of the tortious conduct pled against Defendant is intentional and that

---

10.  Plaintiff claims that the Effects Test "is distinguished from the International Shoe minimum contacts analysis" in
that the "defendant is not required to have had any contacts with the forum state" instead the proper inquiry is
whether "defendant's tortious conduct was 'expressly aimed' at the forum state."  (Id.)

    Plaintiff is incorrect.  While requiring a lower quantum and quality of contacts, the Effects Test still necessitates
contact with the forum, and is utilized when "the contacts . . . alone are too small to comport with the requirements of
due process," Roy v. Brahmbhatt, Civ. A. No. 07-5082, 2008 WL 5054096, at *5 (D.N.J. Nov. 26, 2008), but the
defendant "expressly aimed its tortious conduct at the forum."  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265
(3d Cir. 1998).

Pennsylvania was the focal point of the legal process initiated against her.  (Pl.'s Resp. to Costigan Mot. to Dismiss 14-15, 18.)  In addition, Plaintiff contends that the vast majority of the harm, if not all of the harm, suffered by her occurred in Pennsylvania.  (Id.)

The Court recognizes that Plaintiff has arguably satisfied the second and third factors of the Effects Test.  Her claim of specific jurisdiction, however, fails at the first prong of the Effects Test – the showing of an intentional tort.  Specifically, although Plaintiff charges Defendant Costigan with both abuse of process under the Dragonetti Act and intentional infliction of emotional distress, neither of these allegations states a cognizable legal claim.  The Court discusses each individually.

1.       **Plaintiff's Abuse of Process Claim Under the Dragonetti Act Must Fail**

Via the Dragonetti Act, 42 Pa.C.S. § 8351, "Pennsylvania has codified the common-law cause of action for wrongful use of civil proceedings.  The tort is interpreted and applied broadly against those who use legal process as a 'tactical weapon to coerce a desired result that is not the legitimate object of the process.'" Schmidt v. Currie, 470 F. Supp. 2d 477, 480 (E.D. Pa. 2005) (quoting Gen. Refractories v. Fireman's Fund Ins., 337 F.3d 297 (3d Cir. 2003) (quoting McGee v. Feege, 517 Pa. 247, 259 (Pa. 1987))).  The Dragonetti Act provides that a person who takes part "in the procurement, initiation or continuation of civil proceedings against another" may be liable for wrongful use of civil proceedings if, "(1) [h]e acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based;

17

and (2) [t]he proceedings have terminated in favor of the person against whom they are brought."  42 PA. CONS. STAT. § 8351 (1980).

"Whether a person has probable cause to initiate, continue or procure a civil action against another is dictated by 42 Pa. C.S. § 8352."  Broadwater v. Sentner, 725 A.2d 779, 782-83 (Pa. Super. 1999).  The statute provides that a person who participates in "the procurement, initiation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based," and either:

> (1) Reasonably believes that under those facts the claim may be valid under the existing or developing law;
>
> (2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or
>
> (3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 PA. CONS. STAT. § 8352 (1980).  Further, the Act requires gross negligence, which Pennsylvania courts have defined as the "want of scant care" or "lack of slight diligence or care, or a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party, who may typically recover exemplary damages."  Hart v. O'Malley, 781 A.2d 1211, 1218 (Pa. Super. 2001).  Finally, even upon showing gross negligence or the absence of probable cause, one is not liable, under the Dragonetti Act, unless plaintiff can demonstrate the suit was filed for an improper purpose.  Broadwater v. Sentner, 725 A.2d 779, 784 (Pa. Super. 1999).

In this case, Plaintiff cites two actions by Defendant Costigan in support of her Dragonetti Act claims.  The Court finds that neither action rises to the level of a wrongful use of civil proceedings.

### a.   Philadelphia Court of Common Pleas Action

First, the Liquidator, in this case, filed a "Praecipe for Writ of Execution, Praecipe for Writ of Attachment, and Certification of Judgment and Docket Entries from Chester County, State of Pennsylvania in Favor of Plaintiff Gregory Serio against Defendants Richard A. and Jeanne S. DiLoreto in the Amount of $20,507,464.85" in the Philadelphia Court of Common Pleas.  (Philadelphia Court of Common Pleas, Doc. No. 080101641, Serio vs. Di Loreto et. al (Ct. Com. Pl. Jan. 15, 2008) (https://fjdefile.phila.gov/dockets/zk_fjd_public_qry_03.zp_ dktrpt_frames (last visited Dec. 30, 2008))).  Subsequently, the Di Loretos filed a Petition for Preliminary Injunction, Permanent Injunction and Special Injunction raising some of the same issues before this Court—namely the alleged violation of Plaintiff's due process rights culminating in a jury verdict based on "a series of judicial errors, attorney errors, and her non-involvement in the underlying suit."  (Pl.'s Mem. of Law, Serio vs. Di Loreto et. al, Docket Number 080101641 (Ct. Com. Pl. Feb. 26, 2008), 1.)  The Honorable Gary F. DiVito denied the Di Loreto's Motion for Injunction stating that "upon consideration of the Motion for Preliminary Injunction and Special Injunction (the "Motion") and the Opposition thereto, it is hereby ordered, that the Motion is Denied."  (DiVito Order, Civ. A. No. 1641 (Pa. Ct. Com. Pl. May 21, 2008)).

Given Judge DiVito's Order, Plaintiff has failed to meet a basic requirement of the Dragonetti Act:  only a prevailing party may bring malicious prosecution claim.  See 42 PA.

CONS. STAT. § 8351(a)(2) (1980); <u>Roofers Local 30 Combined Welfare Fund v. Union Roofing Contractors</u>, Civ. A. No. 07-1714, 2008 WL 4716862, at *2 (E.D. Pa. Oct. 21, 2008).  Failure to meet this fundamental requirement means that Plaintiff has also failed to satisfy the first prong of the Effects Test, showing that an intentional tort, warranting the granting of *in personam* jurisdiction was committed.[11]

## b.    **Involuntary Bankruptcy Proceeding**

Second, Plaintiff references the involuntary Chapter 7 proceeding filed against her by the NYSID Superintendent, (Chapter 7 Involuntary Petition, <u>In re Di Loreto</u>, Doc. No. 07-15413bf

---

11.  This Court does not agree with Defendant Costigan that Judge DiVito's order precludes Jeanne Di Loreto from "further litigating in this Court her constitutional challenge to the verdict requirement in the New York trial." (Costigan Letter to the Court, Civ. A. No. 08-989, Doc. No. 20, p. 2, submitted Aug. 11, 2008.)  While Plaintiff's Motion for Injunction presents the same due process claim raised in the Complaint before this Court, Judge DiVito's Order "upon consideration of the Motion for Preliminary Injunction and Special Injunction" does not constitute a "final judgment" and as such Judge DiVito's Order has no preclusive effect upon this Court.

     Denial of the preliminary injunction usually cannot serve as a final judgment on the merits since "by definition it is a temporary remedy granted until that time when the party's dispute can be completely resolved." <u>Consolidation Coal v. Dist. 5, United Mine Workers</u>, 336 Pa. Superior Ct. 354, 363 (Pa. Super. 1984)   <u>See Air Terminal Services, Inc. v. Lehigh-Northampton Airport Auth.</u>, Civ. A. No. 96-2314, 1996 WL 460059, at *4 (E.D. Pa. Aug. 1, 1996).  "A preliminary injunction ruling is typically of no preclusive effect because it is not a judgment on the merits and 'by definition it is a temporary remedy granted until that time when the party's [sic] dispute can be completely resolved.'"  <u>Hayes v. Ridge</u>, 946 F. Supp. 354, 363 (E.D. Pa. 1996).  <u>See Bryfogle v. Carvel Corp.</u>, 666 F. Supp. 730, 735 (E.D. Pa. 1987) ("[a] preliminary injunction is superseded by a final judgment on the merits." (quoting <u>Ameron v. U.S. Army Corps of Eng'rs.</u>, 610 F. Supp. 750, 757 (D.N.J. 1985), <u>aff'd as modified</u>, 787 F.2d 875 (3d Cir.), <u>on reh'g</u>, 809 F.2d 979 (3d Cir. 1986)); <u>In re the Appeal of Little Britain Twp. From the Decision of the Zoning Hearing B. of Little Britain Township, Lancaster County, Pa.</u>, 651 A.2d 606, 611 (Pa. Commw. Ct. 1994) (a preliminary injunction is to put and keep matters in the position in which they were before the improper conduct of the defendant commenced).

     However, there are instances where a preliminary injunctions may have preclusive effect "if the circumstances make it likely that the findings are 'sufficiently firm' to persuade the court that there is no compelling reason for permitting them to be litigated again."  <u>Hawksbill Sea Turtle v. FEMA</u>, 126 F.3d 461, 474 n.11 (3d Cir. 1997).  Whether the findings are "sufficiently firm" to merit preclusive effect "turns on a variety of factors, including 'whether the parties were fully heard, whether the court filed a reasoned opinion, and whether that decision could have been, or actually was appealed.'"  <u>Id.</u> at 474 n.11 ( citing <u>In re Brown</u>, 951 F.2d 564, 569 (3d Cir. 1991)).  "Preclusion would seem to be particularly appropriate in a second action seeking the same injunctive relief."  <u>Id.</u> (citing <u>Lyon Ford, Inc. v. Ford Mktg. Corp.</u>, 337 F .Supp. 691, 695 (E.D.N.Y. 1971)).

     Given that the Common Pleas Court denied Plaintiff's Motion for Injunctions in one sentence, this Court does not believe that a "reasoned opinion" was issued.  The Common Pleas decision does not preclude hearing Plaintiff's Due Process claim.  Whether this Court has jurisdiction to hear such a claim is an altogether different matter.

(Bankr. E.D. Pa., Sep. 17, 2007)), which was dismissed because the Liquidator "did not comply

with the service requirements of Rule 7004."[12]   In re Di Loreto, Civ. A. No. 07-15413, 2008 WL

141922, at *5 (Bankr. E.D. Pa. Jan. 11, 2008).  Plaintiff asserts that the Liquidator's involuntary

Chapter 7 bankruptcy filing constituted an intentional tort.  (Pl.'s Resp. to Costigan Mot. to

Dismiss 14).

---

12.  Defendant Costigan claims that the bankruptcy court's decision finding that the Liquidator did not file its involuntary chapter 7 bankruptcy proceeding in "bad faith" prevents Plaintiff from litigating the abuse of process "cause of action because Chief Judge Fox's findings negative any gross negligence, improper motive or improper use of process on the part of the Liquidator."  (Costigan Ltr. to Ct., Civ. A. No. 08-989, Doc. No. 20, p. 4, submitted Aug. 11, 2008.)

     "As commonly explained, the doctrine of collateral estoppel can apply to preclude relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action."  U.S. v. Stauffer Chem. Co., 464 U.S. 165, 170-71 (1984).  This doctrine ensures that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  Mont. v. U.S., 440 U.S. 147, 153 (1979).  The Third Circuit has identified four required elements for the application of collateral estoppel:  "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."  Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006) (internal quotations omitted), cert. denied, 127 S. Ct. 1878 (2007).  The Third Circuit has also considered whether the party being precluded "had a full and fair opportunity to litigate the issue in question in the prior action, . . . and whether the issue was determined by a final and valid judgment."  Id. (internal quotation marks and citations omitted).  Notably, "[c]omplete identity of parties in the two suits is not required for the application of issue preclusion."  Burlington N. R. Co. v. Hyundai Merch. Marine Co. 63 F.3d 1227, 1232 (3d Cir. 1995).  "The party seeking to effectuate an estoppel has the burden of demonstrating the propriety of its application."  Suppan v. Dadonna, 203 F.3d 228, 233 (3d Cir. 2000).

     The chief question in this present case is the first element:  whether the issue sought to be precluded is the same as that involved in the previous action.  Burlington N.R., 63 F.3d at 1231-32.  "'Identity of the issues is established by showing that the same general rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules.'"  Suppan, 203 F.3d at 233 (quoting 18 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, FEDERAL PRACTICE & PROCEDURE § 4425, at 253 (1981)).  "To defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standards must be 'substantial.'"  Raytech Corp. v. White, 54 F.3d 187, 191 (3d Cir. 1995) (citations omitted).

     This Court is required to give preclusive effect to the bankruptcy court's determination that the Liquidator was not acting in bad faith when it filed an involuntary Chapter 7 bankruptcy against Plaintiff.  However, the bankruptcy court's ruling does not preclude the entirety of Plaintiff's claims regarding the involuntary bankruptcy, as the Dragonetti Act requires a finding of "gross negligence" and not "bad faith."  In as much as Plaintiff's petition for fees under 11 U.S.C § 303(i)(2) asserts that Plaintiff acted in bad faith, this Court is precluded from addressing Plaintiff's claims.  However, Plaintiff's claims alleging gross negligence are not precluded and will be addressed in the body of this memorandum.

As noted above, to support a claim under the Dragonetti Act, the movant must show a favorable termination on the part "of the person against whom" a legal action was brought. 42 PA. CONS. STAT. § 8351(a)(2) (1980). Favorable termination "need not be an adjudication on the merits; [it] can occur as the result of a voluntary dismissal of the underlying proceeding or an abandonment of the proceeding." Doby v. Decrescenzo, Civ. A. No 94-2991, 1996 WL 510095, at *16 (E.D. Pa. Sept. 9, 1996). In the bankruptcy filing, no ruling was made on the merits, but rather the suit was dismissed due to improper service. In re Di Loreto, 2008 WL 141922, at *5. The dismissal of the Liquidator's suit, while not an "adjudication on the merits" still constitutes a favorable termination for purposes of 42 Pa.C.S. § 8351(a)(2).

Nevertheless, Plaintiff has not met § 8351(a)(1)'s requirement that the Liquidator's filing suit be either "grossly negligent" or "without probable cause and primarily for the purpose other than that of securing the proper . . . adjudication of the claim in which the proceedings are based." 42 PA. CON. STAT. § 8351(a)(1) (1980). As noted above, Pennsylvania courts define gross negligence as "a lack of slight diligence or care, or a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party, who may typically recover exemplary damages." Hart v. O'Malley, 781 A.2d 1211, 1218 (Pa. Super. 2001).

 The bankruptcy court's decision undermines any claim of gross negligence. After dismissal of the proceedings based on improper service, Plaintiff filed a Motion to Reopen the Case and for Attorneys Fees, Costs and Damages Pursuant to 11 U.S.C. Section 303(i). (Motion for Fees and Costs, In re Diloreto, Doc. No. 07-15413bf (Bankr. E.D. Pa., Jan. 24, 2008)). The Bankruptcy Court partially granted Plaintiff's Motion awarding $63,150 in attorneys fees plus $6,859.44 in costs. In re Diloreto, 388 B.R. 637, 656 (Bankr. E.D. Pa. 2008). The court,

however, denied a damages award noting that "[i]n reviewing the totality of circumstances, I
cannot conclude that Mrs. Diloreto has overcome the presumption that the Liquidator's
involuntary petition was not filed in bad faith." Id. at 649.  Supporting this conclusion, the court
noted that the Liquidator held a $20 million judgment claim against Plaintiff and believed that
she "was planning to place litigation proceeds out of the reach of her creditors, which . . . – in
light of certain prior actions – was a sincere belief . . . and not the product of malice." Id.  In
other words, examining the "totality of circumstances," the bankruptcy judge determined that
the Liquidator did not act in bad faith, as the Liquidator (1)  "performed a judgment and lien
search," (2) knew Plaintiff had improperly diverted assets, and (3) held a $20 million claim that
"was upheld on appeal." In re Diloreto, 388 B.R. at 649.

Although "bad faith" and "gross negligence" involve different legal standards, the
bankruptcy court used a fact-intensive, global approach in determining the absence of bad faith,
examining numerous factors influencing the Liquidator's decision to file an involuntary
bankruptcy petition.  The range and breadth of the bankruptcy court's analysis encompasses the
standard imposed by Pa.C.S. § 8351(a)(1).  Consistent with the bankruptcy court's findings and
the record before it, this Court determines that the Liquidator's involuntary bankruptcy filings
were neither "grossly negligent" nor "without probable cause and primarily for the purpose" of
adjudicating "the claim in which the proceedings are based."  At no time did Defendants
demonstrate disregard for their legal duties or act in a reckless manner as they "sincerely"
believed Plaintiff was planning to place litigation proceeds outside the reach of her creditors.

Given these findings, Plaintiff has failed to satisfy the Dragonetti Act's requirement that
to assert an abuse of process claim, the civil proceedings must be initiated in a "grossly

negligent manner." 42 PA. CON. STAT. § 8351(a)(1) (1980).  Further, Plaintiff has failed to show that the involuntary bankruptcy was instituted without probable cause or with malice.  See Roofers Local 30, 2008 WL 4716862, at *2.  Plaintiff's failure to allege an intentional tort means that Plaintiff has not satisfied the first prong of the Effects Test—commission of an intentional tort—regarding the involuntary bankruptcy proceeding.

### 2. Plaintiff's Claim for Intentional Infliction of Emotional Distress

Similarly, Plaintiff's claim that Defendant Costigan committed the tort of intentional infliction of emotional distress ("IIED") must fail.  To sustain an IIED claim, plaintiff must establish that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused emotional distress; and (4) the resultant emotional distress was severe.  Bruffett v. Warner Commc'ns, Inc., 692 F.2d 910, 914 (3d Cir. 1982).  For an IIED claim to survive, the court must find that the alleged misconduct is so extreme and outrageous that it "go[es] beyond all possible bounds of decency, and . . . [is] regarded as atrocious, and utterly intolerable in a civilized society."  Wilkes v. State Farm Ins. Cos., No. 05-586, 2005 WL 1667396, at *4 (M.D. Pa. July 15, 2005).  "Finally, Pennsylvania law requires some type of physical harm due to the defendant's outrageous conduct to satisfy the severe emotional distress element."  Livingston v. Borough of Edgewood, Civ. A. No. 08-812, 2008 WL 5101478, at *6 (W.D. Pa. Nov. 26, 2008) (internal quotations omitted).

Plaintiff's failure to show that she suffered any physical harm necessitates dismissal of her IIED claim.  In turn, her IIED claim cannot constitute an intentional tort.

### 3.   Plaintiff has Failed to Show That Defendant Costigan Played Any Role in the Pennsylvania Lawsuits

Finally, even assuming Plaintiff could state a claim for the above intentional torts, Plaintiff has not established that Defendant Costigan played any role in the Liquidator's Pennsylvania lawsuits, such that he could be said to have committed the torts for purposes of the Effects Test.  Plaintiff asserts that Defendant Costigan filed a motion for *pro hac vice* admission in the Chester County Court of Common Pleas, which is sufficient to create jurisdiction.  She goes on to claim that "Defendant Costigan was motivated by malice, ill-will and personal animus . . . and acted with willful disregard of the rights guaranteed to her under the New York and United States Constitutions."  (Phila. Compl. 3 & ¶ 123.)  Further, Defendant deliberately targeted her out of a desire to harm "a Pennsylvania resident in the place where she lives," and "was the person responsible for executing judgment in Pennsylvania, and attended every hearing regarding the judgment, in Pennsylvania."  (Pl.'s Resp. to Costigan Mot. to Dismiss 14.)   In short, Plaintiff contends that Pennsylvania was the focal point of Defendants' tortious activity and harm, and Plaintiff felt the brunt of the harm in Pennsylvania.  (Id. at 15.)

Plaintiff's argument is misplaced on several grounds.  Primarily, all the Pennsylvania actions were initiated by Pennsylvania counsel, and Costigan has not been a member of the Pennsylvania bar for twenty-five years.  There is no record that Costigan represented the Liquidator in any of the Pennsylvania actions.  Plaintiff may not "rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. . . plaintiff must respond with actual proofs, not mere allegations."  Patterson v.

Fed. Bureau of Investigation, 893 F.2d 595, 603-04 (3d Cir. 1990) (quoting Time Share

Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 67 n.9 (3d Cir. 1984)).

Further, Defendant Costigan's *pro hac vice* application is an insufficient basis on which

this Court can exercise personal jurisdiction.  Repeatedly, courts have found that "an attorney's

entry of a court appearance *pro hac vice* in the forum state, without more, is not a substantial

enough contact to permit that court to exercise jurisdiction over his person."  Wolk v, Teledyne

Indus. Inc., 475 F. Supp. 2d 491, 502 (E.D. Pa. 2007) (quoting Sea Marsh Group, Inc. v. SC

Ventures, Inc., 111 F.3d 129, 1997 WL 173232, at *6 (4th Cir. 1997) (Table)); see also Ajax

Enter., Inc. v. The Symoniak Law Firm, Civ. A. No. 05-5903, 2008 WL 1733095 (D.N.J. Apr.

10, 2008).[13]

In sum, clearing away Plaintiff's rhetorical underbrush, this Court is left with only a few

facts regarding Costigan's actions in Pennsylvania:  (1) he allegedly "attended every hearing

regarding the judgment,"[14] (2) he applied for *pro hac vice* admission, and (3) he testified at an

April 23, 2008, evidentiary hearing before Judge DiVito.[15]  *Ad hominem* attacks regarding

Costigan's alleged actions do not compensate for sworn affidavits, competent evidence, or well

pled facts.  Given Plaintiff's failure to provide greater factual detail, this Court is unwilling to

---

13.   Although in Wartsila NSD N. Am., Inc. v. Hill Int'l., Inc., 269 F. Supp. 2d 547 (D.N.J. 2003), the court found, in *dicta*, that "by seeking *pro hac vice* admission to this Court and purporting to 'represent and act on behalf of' the plaintiff in this litigation" counsel "voluntarily exposed herself to the jurisdiction of this Court," that case is readily distinguishable from the present one.  Id. at 558.  Unlike counsel in Wartsila, Defendant Costigan's motion for admission has not been granted.  Further, there is no record that Costigan purported to "represent and act on behalf of" the Liquidator in any of the Pennsylvania actions.

14.   (Pl.'s Resp. to Costigan Mot. to Dismiss 15.)

15.   (Costigan Letter to the Court, Civ. A. No. 08-989, Doc. No. 20, p. 1-2, submitted Aug. 11, 2008.)

find that Defendant Costigan's pending application for *pro hac vice* admission creates personal jurisdiction over him.

Based on the entirety of the record, this Court finds that it does not possess jurisdiction over Defendant Costigan as his contacts with the Commonwealth of Pennsylvania are not the sort of purposeful contacts necessary for personal jurisdiction. And Plaintiff has failed to establish that Costigan's limited contacts create jurisdiction under the Effects Test as there has been no showing that he committed any intentional torts. For these reasons Defendant Costigan's Motion to Dismiss is granted.

### C.   Defendants Dinallo, Peters, and Lorins' Motion to Dismiss

The final motion to dismiss before the Court is that of Defendants DiNallo, Peters, and Lorin ("NYSID Defendants"). The NYSID Defendants are presently or have been employed by the NYSID. Defendant DiNallo is the Superintendent of the NYSID "with ultimate authority for all actions taken by the New York Insurance Department, including, but not limited to, those of the Liquidation Bureau during all times relevant." (Compl. ¶ 4.) Defendant Peters is Deputy Superintendent of the NYSID and is in charge of the Liquidation Bureau, and is "responsible for the actions of the New York Liquidation Bureau throughout the times relevant to this lawsuit in the New York Action, and in particular those taken . . . during the year 2007." (Id. at ¶ 7.) Defendant Lorin is the Assistant Special Deputy Superintendent and General Counsel of the New York Liquidation Bureau, and "is responsible for the actions of the New York Insurance Liquidation Bureau." (Id. at ¶ 8.)

Plaintiff alleges that Defendants DiNallo and Peters "are the principals by succession for all actions taken which relate to this claim and are attributable to the New York Insurance

Department and it Liquidation Bureau, in particular those action which were taken . . from 1984 to the present."  (Id.)  The Complaints further allege that Defendants acted "in their official capacity on behalf of the New York Insurance Department and under color of state" and as a result they are individually as well as jointly and severally liable for the actions of the New York Insurance Department, Superintendent of Insurance, the Liquidator, and the Liquidation Bureau. (Id. at ¶¶ 10, 11.)

In support of their Motion to Dismiss, NYSID Defendants present several arguments including abstention, Full Faith and Credit, and failure to state a claim.  The Court addresses each of these arguments in turn.

### 1.     Abstention

The NYSID Defendants provide two arguments supporting their contention that this Court should abstain from exercising jurisdiction over Plaintiff's instant claims: (1) New York Insurance law § 7419 bars Plaintiff from asserting any claim against the NYSID Defendants during the pendency of the liquidation proceedings; and (2) under Burford v. Sun Oil Co., 319 U.S. 315 (1943) this Court should abstain given the existence of a complex state regulatory scheme and New York state's interest in the efficient administration of its insurance industry. (NYSID Def.'s Mot. to Dismiss 5-9.)  For reasons discussed below, this Court will not abstain.

### a.     Abstention Under New York Insurance Statute § 7419

NYSID Defendants assert that Plaintiff's action is impermissible pursuant to the Liquidation Order from the underlying proceedings.  (Id. at 5.) The Order of Liquidation issued by New York Supreme Court Judge Leonard N. Cohen states in part:

ORDERED, that the officers, directors, trustees, policy-holders, agents and employees of said NASSAU INSURANCE COMPANY, and all other persons, including but not limited to claimants, plaintiffs and petitioners who have claims against the said NASSAU INSURANCE COMPANY, be and they hereby are permanently enjoined and restrained from bringing or further prosecuting any action at law, suit in equity, special or other proceeding against the said corporation or its estate, or the Superintendent of Insurance of the State of New York and his successors in office as Liquidator thereof, or form making or executing any levy upon the property or estate of said corporation, or from in any way interfering with the Superintendent of Insurance of the State of New York, or his successors in office, in his or their possession and control or management of the property of said corporation, or in the discharge of his or their duties as liquidator thereof, or in the liquidation of the business of said corporation.

(NYSID Def.'s Mot. to Dismiss, Ex. A Order of Liquidation, 7-8.)  NYSID Defendants contend that this Order, authorized under New York statutory law, encompasses Plaintiff's claims and precludes her from pursuing them.  (Id. at 6; NYSID Def.'s Reply to Pl.'s Resp. to Mot. to Dismiss 4.)  The Court disagrees.[16]

New York Insurance Law Section 7419(b) provides that:

Such court or justice may at any time during a proceeding under this article issue such other injunctions or orders as it deems necessary to prevent interference with the superintendent or the proceeding, or waste of the assets of the insurer, or the commencement or prosecution of any actions, the obtaining of preferences, judgments, attachments or other liens, or the making of any levy against the insurer, its assets or any part thereof.

---

16.  Plaintiff claims that she was never an officer, director, trustee, policy-holder or employee of Nassau, thereby excluding her from the scope of the Liquidation Order.  Plaintiff's emphasis on organizational titles obscures the fact that the Order provides that "*all other persons . . .* are permanently enjoined and restrained from bringing or further prosecuting any action at law . . . against the said corporation . . . or the Superintendent of Insurance . . . as Liquidator."  (NYSID Def.'s Mot. to Dismiss, Ex. A Order of Liquidation, p. 7-8) (emphasis added.)  "All other persons" is sufficiently broad to include Plaintiff.  Not withstanding this, the Court agrees with Plaintiff that neither N.Y. Ins. Law § 7419 nor the Liquidation Order justifies abstention.

N.Y. Ins. Law § 7419(b) (1984). A plain reading of this text suggests that its purpose is to preserve assets of the liquidated insurance company by limiting claims.

New York courts have held that the intent of the "Insurance Law [section 74] is to preserve assets of the insolvent insurer for the benefit of policy holders and creditors." Curiale v. AIG Multi-Line Syndicate, Inc., 204 A.D.2d 237, 238 (N.Y. Sup. Ct. 1994); see Pink v. Title Guar. & Trust Co., 274 N.Y. 167 (N.Y. 1937) (enjoining legal proceedings against insolvent insurance company after taken over by state regulator); see also Schenck v. Coordinated Coverage Corp. 50 A.D.2d 50 (N.Y. App. Div. 1975) (noting that the order of liquidation necessarily included injunction against counterclaims despite fact that the order did not specifically refer to counterclaims). In In re Liquidation of Midland Ins. Co., 856 N.Y.S.2d 498, 2008 WL151786 (N.Y. Sup. 2008) (Table), the court opined that "New York State policy is to resolve all claims against an insolvent insurer in a single liquidation proceeding," and "[t]he injunction barring actions against an insolvent insurer is intended to preserve the assets for the benefit of creditors, and to protect policyholders, which is the overall purpose of Article 74 of the Insurance Law." Id. at *9 (quoting Reinsurance Co. of N. Am. v. Superintendent of Ins. of State of NY,183 A.D.2d 626 (N.Y. App. Div. 1992)). It went on to explain that individual claims undermine one of the chief purposes of liquidation—enjoining and staying, "the prosecution of all litigation against the company and hav[ing] its affairs settled up with the least possible expense." Id. *22 (quotations omitted).

Plaintiff's Common Pleas Complaints are the exact converse of the scenario envisioned by § 7419. Plaintiff is not seeking to recover funds from Nassau, but rather contests the Liquidator's efforts to enforce its New York judgment. Clearly, the intent of § 7419 is not to

prevent creditors—subject to judgment by the Liquidator—from opposing the Liquidator's collection efforts.  The Liquidation Order supports this conclusion as it bars only those "who have claims against the NASSAU INSURANCE COMPANY . . . from bringing or further prosecuting any action at law. . . ."  (NYSID Def.'s Mot. to Dismiss, Ex. A Order of Liquidation, p. 7-8.)  Plaintiff asserts no claim against Nassau or the Liquidator.  Therefore, this Court finds abstention based upon § 7419 inappropriate.

> **b.      Abstention Under Burford Would be Inappropriate.**

Burford abstention was designed to prevent federal courts from unduly interfering in specialized, ongoing state regulatory schemes.  See Burford v. Sun Oil Co., 319 U.S. 315 (1943).  In Burford, the Sun Oil Company filed suit in federal court to enjoin a Texas Railroad Commission order granting Burford an oil permit.  Id. at 317.  The Court held that the Commission's order was "part of the general regulatory system devised for the conservation of oil and gas in Texas."  Id. at 318.  Recognizing "the importance of the decisions of the Railroad Commission both to the State and to the oil operators, the Texas legislature . . . established a system of thorough judicial review by its own State courts."  Id. at 325.  Thus—even though appeal of the Commission's Order could be taken to state court—Sun Oil filed suit in federal court.  Id. at 317.

Upon review, the Supreme Court noted that regulation of the oil industry "clearly involves basic problems of Texas policy . . . equitable discretion should be exercised to give the Texas courts the first opportunity to consider them."  Id. at 332-34.  Given this, the Court examined Texas' administrative scheme concluding that "judicial review of the Commission's decisions in the state courts is expeditious and adequate."  Id.  A federal court's interpretation of

state law, was "almost certain" to lead to "[c]onflicts in the interpretation of state law,

dangerous to the success of state policies." Id. at 334.  The Court remarked that "if the state

procedure is followed from the Commission to the State Supreme Court, ultimate review of the

federal questions is fully preserved." Id.  Given the existence of a state regulatory scheme and

the means to redress any federal claims, the Court determined that abstention was appropriate.

Id.

      Subsequent Supreme Court cases have held that Burford abstention "may be warranted

'where the exercise of federal review of the question in a case and in similar cases would be

disruptive of state efforts to establish a coherent policy with respect to a matter of substantial

public concern.'" New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361

(1989) (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 814

(1976)).  Nonetheless, the Court has found that "[w]hile Burford is concerned with protecting

complex state administrative processes from undue federal interference, it does not require

abstention whenever there exists such a process, or even at all in cases where there is a

'potential for conflict' with state regulatory policy." Id. at 362.  Indeed, the Supreme Court has

recognized that while appropriate at certain times the "balance rarely favors abstention, and the

power to dismiss recognized in Burford represents an extraordinary and narrow exception to the

duty of the District Court to adjudicate a controversy properly before it." Quackenbush v.

Allstate, Inc. Co., 517 U.S. 706, 706 (1996).

      Under Burford, a reviewing court must undertake a two-step analysis.  "The first

question is whether 'timely and adequate state-court review' is available. Riley v. Simmons, 45

F.3d 764, 771 (3d Cir. 1995) (quoting New Orleans Public Service, Inc, 491 U.S. at 361

(1989)).  The second prong of the Burford doctrine requires a court to examine three issues:

"(1) whether the particular regulatory scheme involves a matter of substantial public concern,

(2) whether it is 'the sort of complex, technical regulatory scheme to which the Burford

abstention doctrine usually is applied,' and (3) whether federal review of a party's claims would

interfere with the state's efforts to establish and maintain a coherent regulatory policy."

Chiropractic Am. v. Lavecchia, 180 F.3d 99, 105 (3d Cir. 1999) (internal citation omitted).

"Federal courts more readily abstain from a case that contains no issue of federal law."  Lac

D'Amiante du Quebec, Ltee v. Am. Home Assur. Co., 864 F.2d 1033, 1044 (3d Cir.1988)

Applying the two-step Burford analysis this Court determines that the first question—the

availability of timely and adequate state-court review—has not been met.  NYSID Defendants

aver that this Court should abstain given that the "instant proceedings quite obviously interfere

with the 'economical, and efficient winding up of affairs of' . . . [Nassau]," and that "[t]his is

precisely the type of claim where abstention is warranted . . . given the existence of a "complex

state regulatory scheme" which "federal intervention" would interrupt.  (NYSID Def.'s Mot. to

Dismiss 5, 9 (quoting Capital Indem. Corp., 871 F. Supp. 205, 208 (D. N.Y. 1994)).)  Further,

NYSID Defendants state that the "Second Circuit has already concluded that the underlying

proceedings referenced in this very case are subject to Burford abstention."  (Id. at 8 (citing

Corcoran v. Ardra Ins. Co., 842 F. 2d 31 (2d Cir. 1998)).

In support of this argument, NYSID Defendants cite to several cases.  First, in Corcoran

v. Ardra, plaintiff removed to federal court the Liquidator's suit to recover reinsurance proceeds

under an arbitration agreement between Nassau and Ardra.  The district court abstained and

remanded the case to state court.  On appeal, the Second Circuit determined that abstention was

appropriate given "difficult questions of state law ha[d] not yet been resolved by the state courts." Ardra, 842 F.2d at 34, 37.  Like Ardra, Capital Indemnity involved the removal of the Liquidator's suit from New York state to federal court.  871 F. Supp. at 207.  The court deemed abstention appropriate since the case was removed to federal court before the state court proceedings were pursued.  Id. at 210. Finally, in Lac D'Amiante, plaintiff filed suit in the District of New Jersey seeking indemnification from its insurer, who had been liquidated by the NYSID Superintendent.  Lac D'Amiante, 864 F.2d at 1034.  The Third Circuit determined that the district court should have abstained as Burford abstention was "clearly warranted on the facts," and "the liquidator, subject to full review by the New York court system" was able to distribute assets of the insured.  Id. at 1048, 1046.

The present case is readily distinguishable from these cited cases.  In each of these instances, had the courts not abstained, their actions would have unduly interfered with the operation of New York's regulatory scheme.  Failure to abstain, in any of these cases, would have disrupted "timely and adequate state-court review," which remained available to the parties.  In this case, such review is neither available nor possible.  Three times Plaintiff has appealed the Supreme Court's decision—once to New York's Supreme Court, Appellate Division and twice to its highest court, the Court of Appeals.  Each time, appeal was denied.  Given that Plaintiff has exhausted her New York state-court appeals, timely and adequate state court review is not possible and the first prong of Burford has not been met.

Likewise, NYSID Defendants have failed to satisfy the second step of the Burford doctrine.  Undoubtedly, the first two requirements have been met as it is patently obvious that New York's liquidation scheme (1) encompasses a matter of substantial public concern, and (2)

is the sort of complex, technical scheme appropriate for <u>Burford</u> abstention.  <u>Chiropractic Am.</u>, 180 F.3d at 105.  By contrast, the third issue—that federal review would undermine efforts to maintain a coherent policy—has not been met.  Nothing in the present case would interfere with New York's insurance regulations.  Plaintiff seeks to prevent the Liquidator from enforcing the New York judgment in Pennsylvania.  Plaintiff's actions involve Pennsylvania assets, and do not affect the operation of New York's regulatory structure.  While empowered by New York law to act as Liquidator, describing these Pennsylvania court filings as part of New York's regulatory scheme subverts the notion of federalism and comity, unmooring the Liquidator's authority and providing him with wide-roaming power far outside the bounds of New York state.  For these reasons <u>Burford</u> abstention is unwarranted.

### 2.     The New York Judgments Must be Given Full Faith and Credit by This Court

NYSID Defendants next contend that the Full Faith and Credit Clause[17] of the United States Constitution requires that Pennsylvania courts give full effect to the New York verdict which found Plaintiff liable for $20,507,456.86, as well as subsequent court decisions affirming that verdict.  (NYSID Def.'s Mot. to Dismiss 18.).  The Court finds merit to this argument.

Pennsylvania's Uniform Enforcement of Foreign Judgments Act provides that once a judgment is properly filed in a Commonwealth Court of Common Pleas, "[t]he clerk shall treat the foreign judgment in the same manner as a judgment of any court of common pleas of this

---

17.  Article IV § 1 of the United State's Constitution states that "[f]ull faith and credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.  And the Congress may be general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

Commonwealth." 42 PA. CON. STAT. § 4306 (1978).  Foreign judgments[18] "shall have the same effect and be subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of any court of common pleas of this Commonwealth and may be enforced or satisfied in like manner."  Id.  "Judgments of courts with competent jurisdiction are entitled to a presumption of validity, and must be recognized as such by Pennsylvania courts when transferred pursuant to 42 Pa. C.S.A. § 4306."  Tronagun Corp. v. Mizerock, 820 F. Supp. 225, 228 (W.D. Pa. 1993); see also Nobel Well Serv., Inc. v. Penn Energy, 502 A.2d 200, 205 (Pa. Super. Ct. 1985).  Federal courts "must give the same preclusive effect to a state-court judgment as another court of that State would give."  Peduto v. City of N. Wildwood, 878 F.2d 725, 728 (3d Cir. 1989).

Nonetheless, the Supreme Court has recognized exceptions where application of state preclusion law would violate principles of due process.  Kremer v. Chem. Constr. Corp., 456 U.S. 461, 482 (1982).  Specifically, the Court noted that "[a] State may not grant preclusive effect in its own courts to a constitutionally infirm judgment and other state and federal courts are not required to accord full faith and credit to such a judgment."  Id.

Drawing upon Kremer, Plaintiff argues that Pennsylvania should refuse to accord full faith and credit to the New York Actions on the basis of several due process violations.  (Pl.'s Resp. to NYSID Def.'s Mot. to Dismiss 16.)  First, Plaintiff argues that Pennsylvania should find that the New York jury verdict violated her due process rights as the verdict, by purported

---

18.   The term "foreign judgment" refers to "any judgment, decree, or order of a court of the United States or of any other court requiring the payment of money which is entitled to full faith and credit in this Commonwealth."  42 PA. CON. STAT. § 4306(f) (1978).

agreement of the parties, was rendered by less than 5/6th of the jurors as required by the New York Constitution and New York CPLR § 4113.  (Compl. ¶ 71.)  Neither Plaintiff's counsel nor Defendant Costigan—whom Plaintiff claims was obliged to bring the error to the Court's attention—objected to the court's ruling about the agreement necessary to reach a verdict.  (Id. ¶¶ 72-76.)  While Costigan apparently knew that the verdict rendered against Mrs. Di Loreto deprived her of due process of law, Plaintiff's counsel allegedly did not become aware of the error until after post trial motions had been decided in June of 2002.  (Id. at 80-81.)  At that time, counsel for Plaintiff "immediately raised the failure of the defendant to secure a constitutionally acceptable verdict with the Appellate Division of the New York Supreme Court."  (Id. ¶ 83.)

Second, Plaintiff contends that Defendant Costigan remained "in derogation of his duties to the Court, and in direct violation of his duty as an officer of the Court" as he "made a false statement of fact and represented that the attorneys for Mrs. DiLoreto had affirmatively waived the requirements of the 5/6th rule."  (Id.)  Due to these alleged misrepresentations, the Appellate Division held that Mrs. Di Loreto waived her right to a 5/6th jury verdict and refused to grant relief to her.  (Id. at ¶ 85.)  Twice the New York Court of Appeals, refused to consider the matters raised on behalf of Mrs. Di Loreto as they related to any violation of the 5/6th rule.  (Id.)  Plaintiff claims that the facts as laid out in her Complaint "reveal[s] a pattern of continuous conduct that violated Plaintiff's civil rights under 42 U.S.C. Sections 1983."  (Pl.'s Resp. to NYSID Mot. to Dismiss 17.)

"The core of due process is the right to notice and a meaningful opportunity to be heard."  LaChance v. Erickson, 522 U.S. 262, 266 (1998).  Although, "process required varies

37

with the demands of the particular situation in question," the Third Circuit has identified the following as elements essential to due process:  (1) notice; (2) a neutral arbiter; (3) an opportunity to make an oral presentation; (4) a means of presenting evidence; (5) an opportunity to cross-examine witnesses or to respond to written evidence; (6) the right to be represented by counsel; and (7) a decision based on the record with a statement of reasons for the result.  Rogin v. Bensalem Twp., 616 F.2d 680, 694 (3d Cir. 1980).

This Court's review of the record reveals that New York courts did not violate Plaintiff's due process rights.[19]  Every step of the way—from the initial Supreme Court trial through Plaintiff's three unsuccessful appeals—the Rogin criteria were met.  Rogin, 616 F.2d at 694. Plaintiff clearly had notice, appeared before a neutral arbiter, made oral argument, presented evidence, conducted cross-examinations, responded to written evidence, was represented by counsel, and received a decision on the record with a statement of reasons for the result.[20]  Id. Three times, on appeal, Plaintiff unsuccessfully raised the alleged constitutional infirmities. Three times Plaintiff's claims were rejected.  The Supreme Court, Appellate Division rejected Plaintiff's assertions based, not upon the averments of Defendant Costigan, but rather because

---

19.   NYSID Defendants argue that this Court need not determine whether Plaintiff's due process rights were violated given that, unlike all of the cases cited by Plaintiff, the alleged violation of her due process rights had "already been litigated in the underlying proceedings."  (NYSID Def.'s Reply to Pl.'s Resp. to Mot. to Dismiss 7.) As such, res judicata bars Plaintiff from "relitigating issues that were or could have been raised" in a prior action, and collateral estoppel acts as a bar given that a court "has decided an issue of fact or law necessary to its judgment" precluding relitigation at this time.  (Id. quoting San Remo Hotel, L.P. v. City & County of S.F., 545 U.S. 323, 336 (2005).

         NYSID Defendants are correct—if Plaintiff's due process claims were or could have been litigated previously, this Court is precluded from reconsidering them.  But the preclusive effect of the prior suits turns upon the validity of the New York judgment.  In this regard, Plaintiff is correct—this Court must first determine whether the New York rulings satisfied "the due process to which their [Pennsylvania's] citizens are entitled."  (Pl.'s Resp. to Def.'s Mot. to Dismiss 16.)

20.   Rogin addressed the adequacy of a due process in a trial court.  As a result, not all of the seven Rogin factors need to appear at the appellate levels for there to have been due process.

"[t]he *record* discloses that defendants-appellants consented to a verdict rendered by six of eight jurors.  Accordingly, defendants-appellants waived their claim that the verdict was rendered by less than five sixths of the jury."  Serio v. Ardra Ins. Co., Ltd, 304 A.D.2d 362, 363 (N.Y. App. Div. 2003) (emphasis added).  Independent of Defendant Costigan, the Appellate Division made its own determination regarding the appropriateness of the Supreme Court verdict.  And the Court of Appeals, twice declined to hear Plaintiff's appeals.  See Serio v. Ardra Ins. Co., Ltd., 796 N.E. 2d 477 (N.Y. 2003) (appeals on constitutional grounds dismissed); Serio v. Ardra Ins. Co., Ltd., 801 N.E. 2d 423 (N.Y. 2003) (motion for leave to appeal denied).

A "Pennsylvania court may undertake a limited inquiry regarding the jurisdiction of the court that issued the judgement, and the process afforded."  Tronagun Corp., 820 F. Supp. at 228.  Were this Court to deny the New York judgment Full Faith and Credit, it would be rejecting four decisions, including two by New York's highest court.  Absent evidence to the contrary, the record provides no basis for this Court to make such a determination.  For these reasons, the Commonwealth of Pennsylvania must give Full Faith and Credit to the New York judgments, and is precluded from considering Plaintiff's due process claims.

### 3.    Plaintiff's Equal Protection Claim Must be Dismissed for Failure to State a Claim

NYSID Defendants next seek dismissal of Plaintiff's equal protection claim on the ground that it fails to state a claim upon which relief may be granted.  The Court agrees.

To establish a viable equal protection violation, a plaintiff must show an intentional or purposeful discrimination.  Wilson v. Budgeon, Civ. A. No. 05-2101, 2007 WL 464700, at *8 (M.D. Pa. Feb. 13, 2007) (citing Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985)

(holding intentional or purposeful discrimination a necessary element of equal protection

violation)).  The Equal Protection Clause does not require that all persons be treated alike but,

rather "all persons similarly situated should be treated alike." Artway v. Att'y. Gen. of State of

N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne v. Cleburne Living Ctr., 473

U.S. 432, 439 (1985)).

Plaintiff asserts that Defendants pursued their claims against her based solely on her

status as a woman and without any further legally cognizable basis.  (Compl. ¶¶ 132-33.)  She

claims to have "painstakingly [laid] out those facts which build a foundation for her arguments

related to Defendants' violation of equal protection" arguing that she was prosecuted because

she had "at best, a tangential relationship with Ardra and decided to prosecute her simply

because of her status as Mr. Di Loreto's wife."  (Pl.'s Resp. to NYSID Def.'s Mot. to Dismiss

25, 26.)

But, the record is clear.  Plaintiff, for a time, was President of Ardra.  Plaintiff owned

Tiber, Ardra's corporate parent.  The New York Supreme Court found Plaintiff liable for

millions of dollars, and New York appellate court determined that:

> the proof showed that the **DiLoretos**, through **their** control of
> Ardra, deprived it of the funds needed to meet its reinsurance
> obligations, and that that circumstance rendered the agreements at
> issue inequitable. Given the sequence of the transactions, in which
> premiums paid by Nassau were immediately transferred to **other**
> **DiLoreto-owned entities**, the jury was entitled to consider the
> sequential transfers as part of an integrated transaction (see Orr v
> Kinderhill Corp., 991 F.2d 31, 35 [1993]; Salomon, Inc. v United
> States, 976 F.2d 837, 842 [1992]) designed to benefit **DiLoreto**
> **entities** by effectively denying Ardra's insured the coverage for
> which it had contracted and paid.

Ardra, 304 A.D. 2d at 363 (emphasis added).  Plaintiff has provided nothing more than bald

assertion to support her equal protection claim.  Accordingly, it must be dismissed.[21]


### 4.      Plaintiff's State Law Claims Are Dismissed

Plaintiff has raised two state law claims: (1) abuse of process and (2) intentional

infliction of emotional distress ("IIED").  (Compl. ¶¶ 134-48.)  Federal courts possess

"supplemental jurisdiction over all other claims that are so related to claims in the action within

such original jurisdiction that they form part of the same case or controversy," but may decline

supplemental jurisdiction if  "the district court has dismissed all claims over which it has

original jurisdiction."  28 U.S.C. § 1367(c)(3).

The United States Supreme Court has held that it remains within the court's discretion to

retain jurisdiction over state law claims where all federal claims have been resolved.  Osborn v.

Haley, 549 U.S. 225, 245  (2007); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350-

51 (1988) (holding that when the federal character of a removed case is eliminated the court has

discretion to retain jurisdiction, to remand, or to dismiss); Mine Workers v. Gibbs, 383 U.S.

715, 725 (1966) (exercising pendent jurisdiction is permitted when federal and state claims have

a "common nucleus of operative fact" and would "ordinarily be expected to [be tried] all in one

judicial proceeding").  Typically, however, courts within the Third Circuit have found that

"once all claims with an independent basis of federal jurisdiction have been dismissed the case

no longer belongs in federal court." Mun. Revenue Serv., Inc. v. McBlain, Civ. A. No. 06-4749,

---

21.    Assuming that Plaintiff had raised a valid equal protection claim this court would still be precluded from
hearing the claim as it should have been raised on appeal in New York.  As such, this Court is estopped from hearing
the claim now.

2008 WL 2973852, at *10 (E.D. Pa. Aug. 4, 2008) (quoting Markowitz v. Ne. Land Co., 906 F.2d 100, 106 (3d Cir. 1990)).

In the present case, Plaintiff's two state law claims share a common nucleus of operative facts with the federal claims, as they are premised on the constitutional invalidity of the New York judgments. As such, in lieu of declining to exercise pendent jurisdiction, the Court retains jurisdiction over the claims and dismisses them on their merits.

First, as discussed supra, Plaintiff's state law abuse of process claim under the Dragonetti Act must fail. With respect to the Court of Common Pleas filing against Plaintiff, this Court has found the proceedings were not terminated in her favor. Further, as this Court has determined that the New York judgments deserve Full Faith and Credit, logic dictates that execution of those same judgments cannot constitute an abuse of process. With respect to the involuntary bankruptcy filing, the Court has already found that the filing was made with probable cause and without malice. Accordingly, we dismiss this claim.

Second, Plaintiff's state law claim of intentional infliction of emotional distress is similarly meritless. As previously indicated, Plaintiff has failed to show the required element of physical harm. See Livingston v. Borough of Edgewood, Civ. A. No. 08-812, 2008 WL 5101478, at *6 (W.D. Pa. Nov. 26, 2008) (requiring some type of physical harm to plaintiff resulting from defendant's outrageous conduct in order to satisfy the severe emotional distress element).[22] This claim, therefore, must also be dismissed.

---

22. The Pennsylvania Supreme Court has adopted the view that in order sustain a claim of IIED, "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Hoy v. Angelone, 720 A.2d 745, 753-754 (Pa. 1998). In Hoy, the Pennsylvania Supreme Court expressly declined to adopt the definition of the tort of intentional infliction of emotional distress as stated in Restatement (Second) of Torts § 46(1), going only so far as to "assum[e]
(continued...)

## IV.     CONCLUSION

For the reasons discussed above, the Motions to Dismiss submitted by the NYSID,

Defendant Costigan, and Defendants DiNallo, Lorin, and Peters are granted.

---

22.  (...continued)
arguendo, that the tort exists." Hoy, 720 A.2d at 753 n.10.

  The Pennsylvania Supreme Court has also held that the plaintiff's distress must be proven by "competent medical evidence." Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 995 (Pa. 1987).  At least two Superior Court cases have read Kazatsky to require actual physical harm to the plaintiff.  Reeves v. Middletown Athletic Ass'n, 866 A.2d 1115, 1122-23 (Pa. Super. Ct. 2004) (citing Fewell v. Besner, 444 Pa. Super. 559, 664 A.2d 577, 582 (Pa. Super. Ct. 1995)).  Subsequently, courts in all of Pennsylvania's federal districts have held that when analyzing IIED claims plaintiff must demonstrate actual physical harm resulting from the offending action(s).  See Huggins v. Coatesville Area Sch. Dist., Civ. A. No. 07-4917, 2008 WL 4072801, * 11 (E.D. Pa. Aug. 27, 2008) (noting that Pennsylvania law requires a showing of physical injury in order to sustain an IIED claim); Everwine v. A.I. Dupont Hosp. for Children of Nemours Found., 2005 WL 3150275, *3 (E.D. Pa. Nov. 22, 2005); see also Provence v. Avon Grove Charter Sch., Civ. A. No. 07-659, 2008 WL 2928314, *11 (E.D. Pa. July 28, 2008) (noting that at least two Pennsylvania Superior Court cases have interpreted Kazatsky to require actual physical harm to the plaintiff); Mann v. Brenner, Civ. A. No. 06-1715, 2008 WL 4491950 (M.D. Pa. Sept. 30, 2008); Livingston v. Borough of Edgewood, Civ. A. No. 08-812, 2008 WL 5101478 (W.D. Pa. Nov. 26, 2008) (cases from other federal districts in Pennsylvania holding that in order to sustain an IIED claim plaintiff must demonstrate the presence of physical symptoms).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


JEANNE S. Di LORETO,                    :          CIVIL ACTION
                                        :
              Plaintiff,                :          NO. 08-989
                                        :
       v.                               :
                                        :
WILLIAM F. COSTIGAN;                    :
ERIC R. DINALLO;                        :
MARK J. PETERS; and                     :
ANDREW J. LORIN,                        :
                                        :
              Defendants.               :
_____ :
JEANNE S. Di LORETO,                    :          CIVIL ACTION
                                        :
              Plaintiff,                :          NO. 08-990
                                        :
       v.                               :
                                        :
INSURANCE DEPARTMENT OF                 :
THE STATE OF NEW YORK;                  :
WILLIAM F. COSTIGAN;                    :
ERIC R. DINALLO;                        :
MARK J. PETERS; and                     :
ANDREW J. LORIN,                        :
                                        :
              Defendants.               :


**<u>ORDER</u>**

**AND NOW**, this *19th* day of *February*, 2009, upon consideration of the Motions to

Dismiss filed by Defendant State of New York Insurance Department (Doc. No. 14, Civ. A. No.

08-989), Defendant William F. Costigan (Doc. No. 13, Civ. A. No. 09-989; Doc. No. 15, Civ.

A. No. 08-990), and Defendants Di Nallo, Peters, and Lorin (Doc. No. 12, Civ. A. No. 08-989;

Doc. No. 13, Civ. A. No. 08-990), as well as Plaintiff's Responses, it is hereby **ORDERED** that

the Motions to Dismiss are **GRANTED** and the following Defendants are **DISMISSED**:  State

of New York Insurance Department, William F. Costigan, Eric R. DiNallo, Mark J. Peters, and

Andrew J. Lorin.

These cases are **CLOSED**.


BY THE COURT


*s/ Ronald L. Buckwalter*
RONALD L. BUCKWALTER, S. J.